IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRAMPUS STANLEY,                )
                                )
              Plaintiff,        )
                                )
    v.                          )    1:17CV913
                                )
NANCY A. BERRYHILL,             )
Acting Commissioner of Social Security, )
                                )
              Defendant.        )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Trampus Stanley ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on July 9, 2014, alleging a disability onset date of May 12, 2014. (Tr. at 18, 173-76.)[1] His claim was denied initially (Tr. at 73-89, 109-17), and that determination was upheld on reconsideration (Tr. at 90-106, 119-26). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 127-28.) Plaintiff, along with his attorney and an impartial

---

[1] Transcript citations refer to the Administrative Record [Doc. #6].

vocational expert, attended the subsequent hearing on January 18, 2017. (Tr. at 18.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and, on August 15, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since May 12, 2014, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. (Tr. at 20.) At step two, the ALJ further determined that Plaintiff had the following severe impairments:

> anxiety; depression; post-traumatic stress disorder; essential tremor; Achilles tendonitis; obstructive sleep apnea; irritable bowel syndrome; arthritis, knee; and degenerative disc disease.

(Tr. at 20-21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 21-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following additional limitations:

> [Plaintiff] cannot climb ropes, ladders or scaffolds. [He] can occasionally climb ramps and stairs. [Plaintiff] can frequently handle and finger bilaterally. [He]

5

should avoid concentrated exposure to unprotected heights, vibrating tools, moving machinery and other hazards. [He] is further limited to simple, routine repetitive tasks of unskilled work. [Plaintiff] is limited to a low stress work environment, defined as no crisis situations, no complex decision-making, and no constant change of routine. [He] can have occasional interaction with the public [and] can stay on task for two hours at a time throughout the workday.

(Tr. at 23.) At step four of the analysis, the ALJ found that the demands of Plaintiff's past relevant work exceeded his RFC. (Tr. at 29-30.) However, the ALJ further determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 30-31.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now raises three challenges to the administrative decision. First, he contends that the ALJ failed to properly consider Plaintiff's Department of Veterans Affairs ("VA") disability rating in accordance with Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337 (4th Cir. 2012). Second, Plaintiff argues that the ALJ erred by failing to account for Plaintiff's use of a service dog in his RFC assessment. Third, Plaintiff contends that "remand is warranted for evaluation of evidence submitted to the Appeals Council." (Pl.'s Br. [Doc. #10] at 1.) After a thorough review of the record, the Court agrees that the ALJ failed to properly consider the VA disability determination, and remand is required. Accordingly, the Court need not consider the additional issues raised by Plaintiff.

Under the regulations in effect at the time Plaintiff's claim was filed, and as further explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration ("SSA"). Rather, "the ultimate responsibility for determining whether an individual is disabled

6

under Social Security law rests with the Commissioner." Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions And Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("SSR 06-03p").[4] Nevertheless, the SSA is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies." Id. at *6. Therefore, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Id. at *6. Moreover, "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at *7.

In Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012), the Fourth Circuit clarified the Commissioner's obligations under 20 C.F.R. § 404.1504 and SSR 06-03p, and held that the Commissioner must give <u>substantial weight</u> to a Veterans Affairs disability rating, based on the following reasoning:

> The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose

---

[4] For claims filed after March 27, 2017, these regulations have been amended and Social Security Ruling 06-03p has been rescinded. The new regulations provide that "in claims filed on or after March 27, 2017, [the SSA] will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," 20 C.F.R. § 404.1504; 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). In rescinding SSR 06-03p, the SSA noted that for claims filed on or after March 27, 2017, "adjudicators will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive to us." 82 Fed. Reg. 15263-01. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the guidance set out above.

7

and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added). The Fourth Circuit further explained, in Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018),

> that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to [another agency's] disability decision, an ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (describing standard for VA decisions); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (explaining that ALJs need not give great weight to VA disability determinations "if they adequately explain the valid reasons for not doing so").

Id. at 692-93.

In the present case, on February 10, 2017, the VA determined Plaintiff's disability rating to be 100%. (Tr. at 1635.) The ALJ in his decision stated that he "considered" Plaintiff's VA disability rating, but assigned this rating little weight. (Tr. at 28.) In explaining the basis for his finding, the ALJ solely relied on the differences between the VA and SSA disability systems. (Tr. at 28.) Specifically, the ALJ's decision included the following reasoning:

> On December 1, 2016, the claimant was awarded 100 percent Veterans disability rating. (Exhibits 1F, page 63; 10F, page 1) The [ALJ] gives little weight to the opinion of the Veterans Administration because the Veterans Administration's disability programs differ from Social Security Administration's disability programs under Titles II and XVI of the Act in several significant areas. For example, the VA expresses disability as a percentage of diminished earning capacity. These percentage values vary with the severity of the veteran's medical condition applied to a hypothetical average person's ability to earn income. In contrast, SSA does not assess degrees of disability. Rather, SSA determines

8

whether a claimant is disabled or blind. To meet the SSA definition of disability, a claimant must have a severe impairment that makes him or her unable to perform past work *or any other substantial gainful work* that exists in the national economy.

A Veterans' Administration disability rating is based on a consideration of the effects of a disease or injury on a hypothetical average person's ability to earn income without consideration of a specific veteran's age, education, or work experience. In contrast, the Social Security Administration provides an individualized assessment that focuses on a claimant's ability to perform work in the national economy. As part of SSA's individualized assessment, the Act requires SSA to consider whether a claimant has worked (substantial gainful activity), whether the impairment(s) will last at least 12 months or result in death (the duration requirement), and whether the claimant's RFC, age, education, and work experience (the vocational factors) affect whether the claimant can engage in other work that exists in the national economy.

The Veterans' Administration and the Social Security Administration also require claimants to meet different technical eligibility factors before awarding disability compensation or benefits. Except for certain wartime veterans, the VA requires a veteran's disease or injury be service-connected. For SSA, Title II and XVI disability benefits have different technical eligibility requirements. Under Title II, a claimant must be insured or have a specific relationship to an insured individual who is now retired, disabled, or deceased. Under Title XVI, a claimant's income and resources must be less than established amounts. The Veteran's Administration does not make an onset finding. VA disability compensation is only payable from the date the veteran filed his or her application; therefore, the effective date of a VA rating has no medical significance. On the other hand, the Social Security Administration must specify an established onset date (EOD) for any allowed claim. Onset of disability may affect the SSA beneficiary's payments and may even determine whether the claimant is entitled to (or eligible for) any SSA benefits.

(Tr. at 28-29.)

While this is an extended discussion, the ALJ's rationale relies only on the differences between the VA and SSA disability systems, without making any particular findings as to Plaintiff's case. However, as this Court has previously explained, "citing to 'different rules and different standards' as a rationale to give less than substantial weight to a VA disability determination is not enough, because such a rationale would apply to every case, and thus

9

cannot clearly demonstrate a reason for departing from the Bird presumption." Hildreth v. Colvin, No. 1:14CV660, 2015 WL 5577430, at *4 (M.D.N.C Sept. 22, 2015) ("The ALJ's assessment of Plaintiff's VA disability ratings runs afoul of Bird in two significant respects. First, the ALJ's statement that she was 'not bound by' the VA's disability ratings because the VA's disability standards differed from those of the SSA disregards Bird's holding to the contrary that, '[b]ecause the purpose and evaluation methodology of both programs are *closely related*, a disability rating by one of the two agencies is *highly relevant* to the disability determination of the other agency.' . . . Second, the ALJ failed to identify *any* grounds (let alone grounds that would amount to a clear demonstration under Bird) for affording the VA ratings less than substantial weight." (emphasis in original)); see also Woods v. Berryhill, 888 F.3d 686, 693 (4th Cir. 2018) (holding that a similar "generic explanation," used to justify assigning little weight to a North Carolina Department of Health and Human Services ("NCDHHS") ruling, was "neither persuasive nor specific" and "did not adequately justify [the ALJ's] decision").

Defendant now argues that the ALJ's decision, when read as a whole, offers sufficient reasons for not adopting the VA rating. (Def.'s Br. [Doc. #12] at 8-13.) However, three days after Defendant filed her brief to this effect, the Fourth Circuit issued its decision in Woods. In that case, the Commissioner argued that, "because the ALJ's decision as a whole makes clear that he considered the same evidence on which the [agency] relied, the ALJ did not need to refer expressly to that evidence in discussing the [agency] decision." Woods, 888 F.3d at 693. However, the Fourth Circuit rejected this contention. In doing so, the Fourth Circuit acknowledged that "[i]t may well be that the ALJ considered this evidence in deciding *both*

10

which doctors and evidence to credit *and* whether the [agency] decision deserved substantial weight," but the ALJ did not so specify, and the Fourth Circuit held that "meaningful review cannot rest on such guesswork." Id. at 693-94 (citations omitted).[5]

In addition, as set out above, the court in Woods clarified exactly what an ALJ must do to demonstrate an "appropriate" deviation from the "substantial weight" presumption accorded to the decisions of other agencies. Id. at 692. Specifically, when according "less than 'substantial weight' to [another agency's] disability decision, an ALJ must give 'persuasive, specific, valid reasons for doing so that are supported by the record.'" Id. The court then expounded as follows:

> For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after [the other agency] issued its decision. This list is not exclusive, but the point of this requirement—and of these examples—is that the ALJ must adequately explain his reasoning; otherwise, we cannot engage in a meaningful review. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (explaining that because we review an ALJ's factual findings for substantial evidence, an ALJ's decision must generally "include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence").

---

[5] In the context of the present case, the Court further notes that, although Defendant's brief details medical evidence discussed elsewhere in the ALJ's decision, the ALJ himself did not find that the VA rating decision was inconsistent with the evidence of record, and the ALJ's decision does not rely on or explain such a determination. Thus, the Commissioner's attempt to supply after-the-fact rationalizations fails to remedy the ALJ's omission. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *1 (M.D.N.C. March 25, 2014) (noting that this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering *post hoc* rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis'").

Woods, 888 F.3d at 692-93. In the instant case, the ALJ provided none of these reasons. Instead, as noted above, he relied solely on differences between the VA and SSA disability systems in discounting the VA determination, without making any case-specific determinations or findings. Thus, as in Woods, the ALJ did not adequately justify his decision to accord the VA decision "less than the substantial weight it generally deserves." Id. at 693. Because such a generic rationale is insufficient under the Fourth Circuit's decisions in Bird and Woods, substantial evidence fails to support the ALJ's decision, and remand is required.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #9] should be GRANTED to the extent set out herein.

This, the 25th day of February, 2019.

                                                                        /s/ Joi Elizabeth Peake
                                                                        United States Magistrate Judge

---

[6] Having reached this determination, the Court need not reach the additional contentions raised by Plaintiff. The Court notes that particularly with respect to the additional evidence submitted to the Appeals Council, the evidence can be considered and addressed by the ALJ in light of the remand required above, so this Court need not consider that issue further at this time.